IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 21-cr-00351-GKF-3 |
| JAMES WILLIAM BUZZARD, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the motion of Defendant James William Buzzard ("James"), asking the Court to require the Government provide him with three categories of discovery—(1) records of meetings with a co-defendant, (2) results of Cellebrite extractions, and (3) communications with the Cherokee Nation. The Government has now provided the first two categories of documents,[1] leaving only the issue of whether Defendant is entitled to communications between the United States and the Cherokee Nation concerning the timing of his federal indictment and/or the dismissal of his tribal charges before the undersigned for decision.

The Court finds that Defendant is not entitled to such discovery based on the current record before it.

**BACKGROUND**

Defendant has been charged in this Court with three counts relating to the death of Jerry Tapp ("Tapp") and the wounding of Cassie Gonzales ("Gonzales") on August 1, 2019—(1) first degree murder in Indian country, 18 U.S.C. §§ 1111, 1153; (2) assault with

---

[1] At the hearing held on April 14, 2023, Defendant's counsel agreed that the motion was moot as to the first two categories.

a dangerous weapon with intent to do bodily harm in Indian country, 18 U.S.C. §§ 113(a)(3), 1153; and (3) carrying, using, brandishing, and discharging a firearm during and in relation to the crime of violence charged in Count 2, 18 U.S.C. § 924(c)(1)(A)(iii). (ECF No. 61 at 1-3.[2]) The indictment was brought on March 21, 2022, several years after the shootings. (*Id.*) However, this was not the first time James had been accused or detained for the offenses, nor was it the federal government's first time to charge James' co-defendants—Cody Dwayne Buzzard ("Cody") and Dakota Chase Buzzard ("Dakota").

### *State Proceedings*

James was first arrested—by the State of Oklahoma—on the day of the shootings in 2019. (ECF No. 154-1.) The State pursued charges against James for murder in the first degree and shooting with intent to kill. *See* Docket, No. CF-2019-206B (Del. Cty. Dist. Ct.).[3] The State charged Dakota with the same offenses and charged Cody with just the murder offense. *See* Docket, No. CF-2019-206A (Del. Cty. Dist. Ct.) (Dakota); Docket, No. CF-2019-206C (Del. Cty. Dist. Ct.) (Cody).[4] The State had been actively prosecuting its case against James for almost a year when the Supreme Court issued its opinion in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), finding that the Muscogee (Creek) Nation's reservation had not been disestablished and upending state prosecutions of certain crimes in the Creek, and potentially other, reservations. In July, James filed a motion to

---

[2] All references to pages numbers in court filings refer to the ECF header.

[3] The docket is available at
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=delaware&number=CF-2019-00206B&cmid=14126 (last visited Apr. 17, 2023).

[4] The docket for Dakota's State case is available at
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=delaware&number=CF-2019-00206A&cmid=14125 (last visited Apr. 17, 2023), while Cody's is available at
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=delaware&number=CF-2019-00206C&cmid=14127 (last visited Apr. 17, 2023).

dismiss the state case, asserting that he was a member of the United Keetoowah Band of Cherokee Indians in Oklahoma ("UKB") and that the alleged crime occurred within the Cherokee Nation. *Mot. to Dismiss*, No. CF-2019-206B (Del. Cty. Dist. Ct. Jul. 29, 2020).[5] On March 19, 2021, the state court dismissed the charges against James and ordered him released from custody. *Crim. Ct. Min.*, No. CF-2019-206B (Del. Cty. Dist. Ct. Mar. 19, 2021).

While the State may have lost jurisdiction over James' alleged offenses, other sovereigns remained that could prosecute him. The Cherokee Nation could exercise its own inherent tribal sovereignty to prosecute James. *See United States v. Lara*, 541 U.S. 193, 197-98 (2004); *see also* 25 U.S.C. § 1301(2) (recognizing the inherent power of Indian tribes to exercise criminal jurisdiction over <u>all</u> Indians). And, the federal government had jurisdiction over certain major crimes (like murder) committed by James, an Indian, in Indian country. *See* 18 U.S.C. § 1153(a); *see also id.* § 1151 (defining Indian country as including "all land within the limits of any Indian reservation").[6]

### *Tribal Proceedings*

The Cherokee Nation chose to exercise its jurisdiction first, and the documents before the Court at least would appear to indicate an actively prosecuted case. Just three days after the dismissal of his state case, on March 22, 2021, the Cherokee Nation charged

---

[5] The motion refers to James' tribe as the United Keetowah Band of the Cherokee Nation of Oklahoma, *id.* at 1, but the tribe's recognized name is slightly different, *see* Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462, 5466 (Jan. 30, 2020).

[6] The Indictment alleges that Jerry Tapp was a non-Indian (ECF No. 61 at 1), which means the federal government would also have jurisdiction to prosecute a broader array of crimes committed by James, an Indian, against Tapp—so long as James had not already been punished by the local law of the tribe. 18 U.S.C. § 1152.

James for the 2019 shootings. (ECF No. 154-6 at 42-43.) The Cherokee Nation alleged that James was a member of the Cherokee Nation[7] and an Indian, and that he—acting in concert with Dakota and Cody—committed murder first degree of Tapp and assault and battery with a dangerous weapon of Gonzales. (*Id.* at 42.) A warrant issued for James' arrest was executed on April 1, 2021. (*Id.* at 35-36.) James first appeared in the District Court of Cherokee Nation on April 13, 2021, and pled not guilty. (*Id.* at 34.). Counsel was appointed for James on April 21, 2021, and appointed counsel filed an appearance on May 11, 2021. (*Id.* at 25, 31-33.) On May 13, 2021, the tribal court held a motion hearing, ordered Defendant's motions due on May 25, 2021, and set James' next court date for July 2, 2021. (*Id.* at 28.) On May 24th, Defendant's tribal counsel filed a motion to set aside the information against him (*id.* at 26); the Nation responded on June 14, 2021 (*id.* at 17-24); and Defendant withdrew his motion at the July 2nd hearing (*id.* at 16). Defendant was recognized back on July 20, 2021 (*id.*), and then August 3, 2021 (*id.* at 15) for disposition. Then, on August 2, 2021, the Cherokee Nation court continued James' case to September 7, 2021 "due to Covid restrictions." (*Id.* at 14.) On September 7th, the tribal court again continued James' setting for a month, this time the matter was "Continue[d] for federal decision." (*Id.* at 13.) On September 27th, James complained of the delays in his case and asked how he could get a trial date. (*Id.* at 11.) Then, on October 5th, his counsel asked for a reduction in bond. (*Id.* at 8-10.) On October 6, 2021, the

---

[7] Membership in the UKB requires at least a ¼ Cherokee blood quantum. *See* About Us, The United Keetoowah Band of Cherokee Indians in Oklahoma, https://www.ukb-nsn.gov/about-us (last visited Apr. 13, 2023). As a result, many UKB members are also eligible for Cherokee Nation citizenship. *See* Const. of the Cherokee Nation, art. IV, § 1 ("All citizens of the Cherokee Nation must be original enrollees or descendants of original enrollees listed on the Dawes Commission Rolls . . . ."). It appears, therefore, that James has dual tribal citizenship.

tribal court rejected this motion and set James' case for pretrial on January 25, 2022, at 1:00 p.m. (*Id.* at 7.) On October 26th, James again wrote to the judge, this time complaining that—as discussed below—his co-defendants were being prosecuted in federal court but he was still in the tribal court and, again, still lacked a trial date. (*Id.* at 5[8].) Pretrial was held, as scheduled, in January 2022, and Defendant was set for a jury trial on February 28, 2022, with the Nation's attorney general ordered to provide final discovery by February 11, 2022. (*Id.* at 4.) However, on the date set for Defendant's tribal court trial, the Nation moved to dismiss the claims against James without prejudice, noting that the United States Attorney's Office had filed a case. (*Id.* at 2.)

Although not documented in Defendant's motion, at hearing, counsel for Defendant represented that his tribal public defender could provide a declaration in this case. This declaration would allegedly include assertions that (1) the Cherokee Nation never provided the tribal defender any discovery, indicating—given the February 11th discovery deadline—that the Nation had never investigated or obtained the results of the State's investigation; and (2) the Nation's prosecutor told the tribal defender that the Nation had no intention of trying James in its courts, were just waiting for the United States to indict, and planned to file a motion to dismiss the case if the United States did not indict.[9]

---

[8] James notes: "I asked for a trial date [and my attorney] said [he] couldn't get one right away[.] [T]his was in May. He said they did want one of [their] first cases to be mine. What happened to my right to a speedy trial[?] How can 2 people be charged in different courts for the same thing[?]" *Id.*

[9] As it relates to the first declaration, Defendant's counsel only represented that he had asked the tribal defender for "everything he had" and that what was provided included no discovery. The undersigned is assuming this could also be included in any future declaration. Counsel only positively stated that the tribal defender would be able to offer a declaration as to the second issue—the statements of the Nation's prosecutor.

5

### *Federal Proceedings*

Meanwhile, the federal government eventually began prosecuting the 2019 shootings as well. On June 8, 2021, by Complaint, the Government alleged that Cody Buzzard, only, committed the crime of conspiracy to murder in Indian country, 18 U.S.C. §§ 1117, 1153. (ECF No. 1.) Cody was arrested on August 5, 2021. (ECF No. 13.) Within a month, the Government had indicted Cody on the murder, assault, and § 924(c) crimes. (ECF No. 16.) Then, on September 22, 2021, the grand jury indicted Cody and Dakota for these charges. (ECF No. 29.)

The federal government did not bring any charges against James for several months. However, on February 18, 2022, the Government filed a complaint against James, asserting he committed the murder, assault, and firearms offenses. (ECF No. 1-MJ.[10]) James was arrested on February 22, 2022. (ECF No. 13-MJ). Less than 30 days later, the United States indicted James for the three offenses in this case. (ECF No. 61.)

### *The Current Motion*

Defendant asks the Court to order the Government to disclose "communications exchanged between the United States and the Cherokee Nation concerning the timing of the federal indictment and/or the dismissal of the tribal charges" against James. (ECF No. 154 at 12.) Defendant asserts "the record suggests that, at some point, the purpose of the Cherokee Nation's proceedings against Mr. Buzzard became to incarcerate Mr. Buzzard pretrial while the United States decided whether or not to bring a federal case";

---

[10] The docket in this matter starts with ECF No. 1 on June 8, 2021, and continues through ECF No. 59 on January 18, 2022. Between ECF No. 59 and ECF No. 60 (dated March 21, 2022), there are 15 out-of-sequence filings, reflecting filings in James' 22-mj-106-SH case before it was consolidated into this case. The undersigned will add an "MJ" suffix to those docket numbers to avoid confusion.

that "[i]f these communications resulted in Mr. Buzzard's continued pretrial incarceration in tribal jail and the delay of his federal indictment, a violation of Mr. Buzzard's statutory speedy trial rights occurred"; and that the communications sought are relevant to this potential violation. (*Id.* at 12-13.) The Government opposes Defendant's motion, asserting Defendant is not entitled its internal government documents under Rule 16(a)(2) and that this rule should be extended to communications with Cherokee Nation officials; that any such communications would otherwise be protected attorney work product; and that Defendant has failed to show any actual prejudice as a result of any delay in filing a federal indictment. (ECF No. 165.)

## ANALYSIS

As the Government's internal documents/work product arguments could be addressed by in camera review, the Court first considers whether Defendant is entitled to discovery in these circumstances at all.

**I.     Absent a Ruse, There is No Violation of Defendant's Statutory Rights**

The Speedy Trial Act provides that any "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. § 3161(b). The term "offense" means a "Federal criminal offense" other than petty offenses and certain other crimes. 18 U.S.C. § 3172(2).

Here, James was first arrested for <u>federal</u> criminal offenses on February 22, 2022 (ECF No. 13-MJ), then indicted 27 days later, on March 21, 2022 (ECF No. 61). There was

7

no facial violation of James' statutory speedy trial rights.[11] *See also Lara*, 541 U.S. at 199, 210 (noting that tribal criminal charges are an exercise of inherent tribal sovereignty and not delegated federal authority).

## II. The Ruse Exception

However, the Tenth Circuit has recognized a "ruse exception" to the usual rules regarding when the Speedy Trial Act's dates are triggered. *See United States v. Pasillas-Castanon*, 525 F.3d 994 (10th Cir. 2008). In *Pasillas-Castanon*, the Tenth Circuit addressed whether the district court erred in refusing to dismiss an indictment under the Speedy Trial Act, when more than 30 days had elapsed between the defendant's arrest by federal authorities on civil charges (immigration removal proceedings) and his indictment on federal criminal charges. *Id*. at 995. The court found it did not.

However, in so ruling, the Tenth Circuit adopted a ruse exception to the Speedy Trial Act, agreeing that the Act "cannot be evaded through sham civil proceedings." *Id*. at 997 ("While civil arrests and detentions do not ordinarily trigger the Speedy Trial Act, they may activate it when law enforcement authorities collude with state or civil officials to detain a defendant as a mere ruse for later prosecution."). This ruse exception is "not easily triggered" and applies "only when a defendant demonstrates that the '*primary or exclusive purpose*' of a civil detention was to hold the defendant for future criminal prosecution." *Id*. at 998. "In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception." *Id*.; *see also id*. at 999 ("Moreover, even the fact that criminal law enforcement officials 'are aware of, and

---

[11] James does not assert that his Sixth Amendment speedy trial rights were potentially violated, nor has he asserted a Fifth Amendment due process violation for pre-indictment delay. As a result, the Court does not consider the Government's prejudice arguments.

8

perhaps slightly involved in, the [civil] deportation proceedings . . . would not establish, as a matter of law, the requisite collusion' to trigger the exception." (quoting *United States v. Grajales-Montoya*, 117 F.3d 356, 366-67 (8th Cir. 1997)). This necessarily requires that the government officials acted in bad faith. *Id*. at 998 n.1.

The Tenth Circuit has not addressed whether the ruse exception applies when a defendant is arrested by another sovereign on criminal charges. "This circuit has yet to rule on whether there is a ruse exception for state arrests, but we have adopted the ruse exception when the *federal* government *civilly* detains an individual to avoid Speedy Trial Act requirements." *United States v. Asfour*, 717 F. App'x 822, 825-26 (10th Cir. 2017) (unpublished) (finding, even if the ruse exception were extended to state detention, it would not apply in the case before it).[12]  Other courts, however, have found the ruse exception equally applicable to state detention. *See United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) ("Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."); *United States v. Woolfolk*, 399 F.3d 590, 596 & n.7 (4th Cir. 2005) ("we believe that a 'restraint resulting from federal action,' sufficient to trigger the time limits of the Speedy Trial Act, occurs when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges"); *but see United States v. Alvarado-Linares*, 698 F. App'x 969, 974 (11th Cir. 2017) (unpublished) (noting the ruse exception is limited to situations in which federal immigration officials detain the defendant). Still other courts have found the exception applicable to tribal detention. *See United States v. Critchell,* No. CR-20-0086-RAJ, 2020

---

[12] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

9

WL 6874690 (W.D. Wash. Nov. 23, 2020) (reviewing, in camera, Government communications with tribal authorities to determine whether improper coordination occurred); *United States v. Concho*, No. 4:06CR17WS, 2006 WL 8427290, at *1 (S.D. Miss. Aug. 31, 2006) (finding no credible evidence the federal government engaged in a ruse with the tribal officials), *aff'd,* 275 F. App'x 398 (5th Cir. 2008) (per curiam).

## III. Standard for Ordering Pretrial Discovery

Even were the ruse exception applicable to cases like this one, the undersigned has a different task—determining whether to order discovery from the United States in the ordinary course.

As a preliminary matter, it does not appear that the requested discovery is warranted under Rule 16(a) as an item "material to preparing the defense" of Defendant. Fed. R. Crim. P. 16(a)(1)(E)(i). In Rule 16(a), the term "defense" does not refer to "any claim that 'results in nonconviction,'" such as—for example—a claim that the prosecutor has brought charges for reasons forbidden by the Constitution. *United States v. Armstrong*, 517 U.S. 456, 462-63 (1996). Instead, "in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." *Id.* at 462 (describing this as a "narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged").

However, it appears that—even when not mandated by Rule 16(a)—the Government may sometimes be obliged to provide discovery for "sword" defenses. For example, in *Armstrong*, which involved a selective-prosecution claim, the Supreme Court found "the showing necessary to obtain discovery" required "some evidence tending to show the existence of the essential elements of the offense," *id.* at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2nd Cir. 1974)), which, in turn, required "a credible

10

showing of different treatment of similarly situated persons," *id*. at 470. At least one court has applied this test in the realm of the Speedy Trial "ruse exception," finding that "a defendant must make a credible showing of collusion in order to obtain such discovery." *United States v. Cuadra-Nunez,* No. 5:14-CR-198-D, 2015 WL 13203392, at *4 (E.D.N.C. Apr. 23, 2015).

### IV. Defendant Has Not Made a Sufficient Showing to Justify Discovery at this Time

Looking only at the materials provided with Defendant's motion, the Court finds no credible showing of collusion.

The decisions of the Tenth Circuit and other courts make it clear that some coordination between sovereigns is not, by itself, evidence of collusion. "Cooperation between state and federal law-enforcement officers is a commonplace that makes investigations more effective and efficient . . . . Cooperative investigations may result in state prosecution or federal prosecution, depending on many considerations." *Asfour*, 717 F. App'x at 826 ("Notably, Defendant presents no evidence of involvement by federal prosecutors before the federal indictment, although even evidence of such involvement would likely reflect just prosecutorial cooperation rather than federal use of the state criminal-justice system as a mere cat's-paw."). Similarly, the Cherokee Nation's decision to forego its prosecution of James—or even its own calculus in deciding to delay its prosecution in hopes that the federal government would take the case on—would not be evidence of collusion. *Cf. id*. at 824 (finding no ruse in case where state charges were dismissed one week after federal indictment). Instead, the Nation's decision could easily

reflect the realities faced by a sovereign with limited penalties available to it[13] that is focused on conserving its resources and prosecuting offenses not being punished elsewhere. More importantly, whatever the Nation's own intentions, these do not necessarily indicate that the <u>federal government</u> was aware of those intentions or otherwise colluded in an effort to have James detained for the "primary or exclusive purpose" of the anticipated federal prosecution.

However, courts have indicated that there <u>is</u> credible evidence of collusion, where it appears the other sovereign <u>never intended</u> to prosecute the defendant. For example, the Ninth Circuit remanded for a hearing on the ruse exception where,

> the circumstances strongly indicate that there may have been collusion between the state and federal authorities, and that the state arrest may have been merely a ruse. First, the same individual was the prosecutor on both the state charges and the federal charges. Second, there is evidence that, from the time Boyd was arrested on state charges in August 2005, the state and federal authorities anticipated that he would be charged federally and that the state charges would be dismissed. Boyd testified that his state public defender indicated to him, as early as October 2005, that the prosecuting attorney told her that the state was not going forward with its prosecution because the federal authorities were planning to pursue their own prosecution under federal law. Yet Boyd was not charged through indictment on the federal charges, for the same conduct that underlies the state charges, until February 2006.

*United States v. Boyd*, 416 F. App'x 599, 600 (9th Cir. 2008) (unpublished);[14] *cf. United States v. Triplett*, 158 F. App'x 768, 770-71 (9th Cir. 2005) (unpublished) (finding no showing of collusion where, "[s]ignificantly, there is no evidence to suggest that [the state

---

[13] Terms of imprisonment imposable by a tribe are limited by the Indian Civil Rights Act, 25 U.S.C. § 1302(a)(7), (b)-(c).

[14] After remand, an evidentiary hearing was conducted, and the record showed the state was ready, willing, and able to proceed with the defendant's state trial; no collusion was found; and the Ninth Circuit upheld the denial of the defendant's motion to dismiss. *United States v. Boyd*, 392 F. App'x 595, 597 (9th Cir. 2010) (unpublished).

prosecutor] would not have prosecuted Triplett had the federal authorities ultimately decided not to").

Defendant's counsel has indicated that he may be able to present such evidence in the future. As yet, however, such evidence is not before the Court,[15] nor is there a pending motion to dismiss under the Speedy Trial Act. At this time, there is no credible evidence of collusion that would trigger a potential right to discovery into the ruse exception under the Act.

IT IS THEREFORE ORDERED that the Motion for Discovery (ECF No. 154) is DENIED.

ORDERED this 17th day of April, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[15] Instead, Defendant's motion relies on Cherokee Nation docket filings (ECF No. 154-6) and generalized, unsworn statements of James' tribal defender that the United States and Cherokee Nation were communicating about the timing of James' indictment; that, in the summer of 2021, the United States told the tribal prosecutor it planned to indict James in January 2022; and that the tribal prosecutor remained in contact with the United States up until the weeks and days before James' tribal trial date in February 2022 (ECF No. 154 at 12-13).